IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02766-CMA-MJW

KEITH FRAZIER,

Plaintiff(s),

v.

MICHAEL MILLER, Warden, CCCF, and
VICKI LEWIS, Librarian, CCF,

Defendant(s).

---

**RECOMMENDATION ON**
**MOTION TO DISMISS FROM DEFENDANT MICHAEL MILLER (Docket No. 18)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order Referring Case entered by Judge Christine M. Arguello on February 3, 2015 (Docket No. 12).

This action is brought pursuant to 42 U.S.C. § 1983 by pro se incarcerated plaintiff Keith Frazier. Following an Order issued by Senior Judge Lewis T. Babcock (Docket No. 11), only Claims One and Two, asserted against defendants Michael Miller and Vicki Lewis, respectively, remain. Defendant Lewis, a former employee of the Corrections Corporation of America ("CCA") (see Docket No. 15 at 1, n.1), has not yet been served. A Show Clause Hearing is set before this court on May 12, 2015, with respect to plaintiff's failure to serve and failure to prosecute Lewis. (See Docket No. 25, Order to Show Cause).

**PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT MILLER**

Plaintiff asserts the following in Claim One with respect to the only defendant who has been served, defendant Miller, Warden of the Crowley County Correctional Facility ("CCCF"). Miller violated plaintiff's right to be free from retaliation for engaging in Constitutionally-protected activities by placing an extreme and unlawful $2.00 monthly limit on plaintiff's outgoing legal mail postage. Miller did this after plaintiff "went above (his) head" to contact the CCA corporate office, Miller's attorneys Hall & Evans, LLC, and various state agencies, including the Governor's Office, in an effort to pressure Miller to reverse an unjust disciplinary conviction for "theft" on September 12, 2012. In order to "encourage/pressure" Miller to actually read and consider plaintiff's appeal of that conviction, plaintiff wrote those letters on September 29, 2012. On October 16, 2012, plaintiff was ordered to the CCCF Unit 1 office where a very angry Miller was waiting for him. Miller proceeded to berate plaintiff for having "treated (him) like a piece of shit" by "going above (his) head" regarding the appeal of his most recent disciplinary action. Miller did reverse that disciplinary decision on October 31, 2012. On November 7, 2012, however, Miller blatantly retaliated against plaintiff by instituting the $2.00 per month legal postage limit. Plaintiff sent a letter to numerous state agencies on December 12, 2012, regarding the retaliatory postage restriction "having the effect of completely blocking his ability to correspond with/access the courts for several weeks out of each month . . . " (Docket No. 10 at 3). Thus, any time he would receive legal mail after having reached his $2.00 postage limit in a particular month, and such mail triggered a deadline that expired prior to the start of a new month (and a new $2.00 spending allowance/limit), the librarian and/or mail room would refuse to send it out. His

pleading would thus end up having to be submitted delinquently. This has happened numerous times since the issuance of Miller's November 7, 2012, memo, and usually the courts have accepted plaintiff's legal work despite being a little late. However, plaintiff estimates that eight to ten times the courts have actually dismissed his action on him for this reason, requiring a lot of extra work on his part to explain how such an occurrence was not his fault so as to get his case reinstated. So far he has been able to save all but two of his legal matters that have fallen victim to Miller's unlawful postage restriction. Plaintiff has approximately one half dozen legal cases going at one time, and this is impossible for him. He cannot purchase his own postage stamps like other inmates because all of his monthly inmate pay has been taken to satisfy his debt ever since he started doing his legal work in 2004. His indigence should qualify him for free legal mail, but he is denied indigent status on the ground that he is receiving inmate pay.

In one last letter plaintiff sent to the CCA office on February 1, 2013, plaintiff threatened legal action if the Warden's retaliatory $2.00 monthly postage limit ever caused him to lose any of his pending lawsuits. Due to enforcement of the policy, an essential pleading in 10-cv-02534-CMA-KMT was submitted delinquently, which led directly to his loss of the case. Judge Tafoya issued her Recommendation to dismiss the remaining claim on February 11, 2013. Plaintiff attempted to send his objections on February 25, 2013, but the librarian refused to mail them because plaintiff had reached his $2.00 legal postage limit for that month. His objections were finally mailed on March 1, 2013, but Judge Arguello issued her Order adopting the Recommendation on March 5, 2013, and entered final judgment the next day. The Order had stated that no

party has filed objections. On March 15, 2013, plaintiff completed a letter to Judge Arguello to explain his situation and request the court withdraw its ruling and accept his objections. However, the librarian did not mail it until April 1, 2013. Plaintiff resubmitted it on August 1 and September 21 and submitted a similar letter to the Tenth Ciruit on October 31, 2013. Plaintiff then filed a Motion for Recall of Mandate/Motion for Permission to File Plaintiff's Objections to Recommendations of U.S. Magistrate Judge Out Of Time on August 26, 2014, but Judge Arguello denied the motion on September 2, 2014. In another civil action before the Tenth Circuit, plaintiff was unable to file a Petition for Panel Rehearing En Banc in a timely manner due to the postage restriction.

Miller's imposition of the legal postage restriction was retaliatory and denied plaintiff's access to the courts. In addition, the restriction is unconstitutional on its face and as applied. Plaintiff seeks compensatory and punitive damages. In addition, he wants the court to recall the Mandate in civil action 10-cv-02534-CMA-KMT so that his objections can be considered and to take whatever steps are necessary to get the Tenth Circuit to recall its Mandate in civil action 13-cv-1535 so that plaintiff's Petition for Panel Rehearing En Banc can be considered. Finally, he seeks the repeal of the postage restriction and that he be granted indigent status immediately which would allow him to become eligible for free legal mail.

**DEFENDANT'S MOTIONS TO DISMISS**

Now before the court for a report and recommendation is the Motion to Dismiss from Defendant Michael Miller (Docket No. 18) in which defendant Miller seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff's claims are barred for failure to exhaust administrative

remedies, (2) plaintiff states no viable claim for retaliation against Warden Miller, and (3) plaintiff states no claim for denial of access to the courts against Warden Miller. Plaintiff filed a response (Docket No. 22), and defendant Miller filed a reply (Docket No. 23). The court has carefully considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed, makes the following findings, conclusions of law, and recommendation.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right

to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

A court generally considers only the contents of the Complaint when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6). Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010). "Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and 'matters of which a court may take judicial notice.'" Henson v. Bank of Am., 935 F. Supp.2d 1128, 1136 (D. Colo. 2013) (quoting Gee, 627 F.3d at 1186). "If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which may be considered in ruling on a motion to dismiss." Id. Here, in his Amended Complaint, plaintiff makes reference to numerous attachments. Those referenced attachments, however, were not attached to the Amended Complaint (Docket No. 10) but were attached to the original Complaint (Docket No. 1). Those attachments are the following: Attachment A - Disposition of Charges regarding a hearing on September 12, 2012; Attachment B - Offender Appeal Form regarding that hearing; [there is no Attachment C]; Attachment D - letter by plaintiff dated September 29, 2012; Attachment E - letter by plaintiff dated September 29, 2012; Attachment F - letter to plaintiff from Hall & Evans dated October 30, 2012; Attachment G - Offender Appeal Form [most hand-written entries are illegible]; Attachment H - Letter to plaintiff from defendant Miller

dated November 7, 2012, regarding the imposition of the $2.00 per month legal postage limitation; Attachment I - letter by plaintiff dated December 13, 2012; Attachment J - plaintiff's Statement of Account Activity from 11/01/2012 - 11/30/2012; Attachment K - plaintiff's Indigent Offender Application and Verification dated 12/27/12; Attachment L - letter by plaintiff dated February 1, 2013; Attachment M - CCCF Outgoing Legal Mail Log - Law Library; Attachment N - CCF Outgoing Legal Mail Log - Law Library; Attachment O - Judge Arguello's Order of March 5, 2013, adopting Judge Tafoya's Recommendation; Attachment P - Plaintiff's Objections to Judge Tafoya's Recommendation; Attachment Q - letter by plaintiff dated October 31, 2013, to the Tenth Circuit Court of Appeals; Attachment R - plaintiff's Motion for Recall of Mandate; Attachment S - Notice of Electronic Filing - Judge Arguello's Order striking a document as untimely; Attachment T - Notice of Electronic Filing - Judge Arguello's Order denying motion for extension of time as moot; Attachment U - plaintiff's Step 1 grievance; Attachment V - plaintiff's Step 2 grievance; Attachment W - plaintiff's Step 3 grievance; Attachment X - March 18, 2014, letter to plaintiff from Grievance Officer Anthony A DeCesaro finding plaintiff's grievance was filed out of time; Attachment Y - August 7, 2014, letter to plaintiff from the Tenth Circuit Court of Appeals; Attachment Z - plaintiff's Motion for Recall of Mandate; and Attachment AA - Order by Tenth Circuit Court of Appeals filed September 3, 2014;

Plaintiff here is proceeding *pro se.* The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro*

*se* complaint to less stringent standards than formal pleadings drafted by lawyers). However, a *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The plaintiff's *pro se* status does not entitle him to application of different rules. See Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010), adopted by 2010 WL 4449729 (D. Colo. Nov. 1, 2010).

Defendant Miller first asserts that the plaintiff's claims are barred for failure to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires exhaustion as a "precondition" to bringing litigation and requires dismissal where a litigant has failed to complete exhaustion before initiating a suit. See Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1140-41 (10th Cir. 2005). This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). See Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). See also Jones v. Bock, 549 U.S.199, 210–12 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). The "failure to exhaust is an affirmative defense under the PLRA, and

. . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. at 216. As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, . . . —rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. Id. at 218.

The Colorado Department of Corrections ("CDOC") has a multi-step administrative grievance process available to prisoners set forth in its regulations which includes a formal three-step written grievance procedure. See CDOC Administrative Regulation ["AR"] § 850-04 . The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to exhaust his administrative records fully. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Furthermore, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford, 548 U.S. at 90.

Here, plaintiff submitted to the court copies of his Step 1, 2, and 3 grievances (Docket No. 10 at 37, 38, 39) and a letter from Grievance Officer Anthony A. DeCesaro's that comprises his decision regarding plaintiff's Step 3 grievance (Docket No. 10 at 40). Mr. DeCesaro states in his letter in pertinent part:

> Your grievance is filed out of time. The time frame for filing grievances is outlined in Administrative Regulation 850-04. You have thirty days from when you knew or should have known of the facts giving rise to this grievance. You became aware of this on 11/7/12 [but] did not file your Step 1 until 4/24/13.
>
> You have failed to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies. This is the last administrative action in this matter.

(Docket No. 1 at 40).

As correctly noted by Mr. DeCesaro, under the applicable regulation here, a prisoner may file a Step 1 grievance no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance. AR 850-04 § (III)(H)(a). According to the Amended Complaint, plaintiff was aware of the $2.00 legal postage restriction on November 7, 2012, when he received defendant Miller's memo informing plaintiff of the postage limitation. (Am. Compl., Docket No. 10, at § D, ¶ 3). Therefore, as defendant Miller correctly asserts, plaintiff's Step 1 grievance was due no later than December 7, 2012. Plaintiff, however, did not file it until April 26, 2013. (Docket No. 1, Attach. U). Consequently, this court finds that since plaintiff failed to comply with the CDOC's deadline for filing grievances, plaintiff did not exhaust his administrative remedies.

In making this finding, the court has considered plaintiff's argument in his response that the time for him to file a grievance on this issue did not begin running once he became aware of the November 7, 2012, memo, but rather once he realized that his legal mail postage restriction that was ordered therein had caused him to suffer an actual injury. Plaintiff notes he was not happy with the restriction as he surmised right away that it had the potential to cause major problems for his legal cases if a lot of work came up all at once, hence his letters to the CCA corporate office, defendants' attorneys, and various state agencies trying to get them to intervene before anything bad could happen. He was, however, allegedly able to manage for several months "with no real trouble" despite the restriction, so he claims he had no need, and no legitimate grounds, to grieve the situation at that point. He contends, however, that on March 11, 2013, when he received Judge Arguello's Order adopting Judge Tafoya's February 11, 2013, recommendation, he first realized that he finally incurred an actual injury from the postage restriction. He thus contends that he had 30 days from that date to submit a grievance on the matter, which he allegedly did.[1]

---

[1]Plaintiff claims that although his Step 1 grievance is dated "4/26/13," he could tell that his case manager Ms. Mann had changed that date - something she allegedly did routinely in order to keep herself from getting into trouble when she accepted a grievance from an inmate but was delayed in actually submitting it. Plaintiff claims the fact that he submitted it prior to March 21, 2013, is also apparent in the context of his text in the grievance when he mentions in the last line that he had a Notice of Appeal due by March 21, 2013, which he claims indicates the date was still in the future at the time he tendered his grievance. Plaintiff suggests or requests that the court suspend these proceedings until an evidentiary hearing can be held at which the original grievance can be produced and examined so as to see that the date was altered (he claims his "3" for March was changed to "4" for April) and Ms. Mann could be called to testify so as to explain that she did indeed do this. (Docket No. 22 at 2).

However, since the Administrative Regulation requires the grievance be filed within thirty days of the date the prisoner knew or should have known of the facts giving rise to the grievance, and plaintiff admits in his response that he knew "right away" the potential the restriction had to "cause major problems for his legal cases" (Docket No. 22 at 2), this court agrees with defendant Miller that the grievance plaintiff finally filed several months later was not timely. The court notes that in one of the letters plaintiff attached to his original Complaint (Attachment I, Docket No. 1 at 22) and referenced in his Amended Complaint (Docket No. 10 at 3), which is dated December 13, 2012, plaintiff claimed that the monthly $2.00 legal postage restriction was already fully precluding his ability to participate in all of his lawsuits. He further claimed that the limitation was "jeopardizing all of [his] legal work that comes up . . . ." (Docket No. 1 at 22). Similarly, in another letter attached to the original Complaint (Attachment L, Docket No. 1 at 25) and referenced in his Amended Complaint (Docket No. 10 at 5), dated February 1, 2013, plaintiff stated that the $2.00 monthly legal postage limit "has had the effect of completely blocking my ability to communicate with the courts in my various pending legal cases . . . " (Docket No. 1 at 25). Therefore, plaintiff was well aware of the facts giving rise to his grievance more than 30 days before he submitted his Step 1 grievance. By not timely submitting his grievance, plaintiff did not comply with the CDOC's deadline and thus did not properly exhaust his claims here. See Woodford, 548 U.S. at 90.

A dismissal based on failure to exhaust should be without prejudice where the time for pursuing administrative remedies has not expired, and the inmate can cure the

defect by simply exhausting the available remedies. See Caldwell v. Nelson, 2013 WL 5586065, at *4 (D. Colo. Oct. 10, 2013). Here, however, the Step 3 Grievance Officer unequivocally stated that his decision was the final administrative action in the matter. Id. Therefore, it is recommended that plaintiff's claim against defendant Miller be dismissed with prejudice.

Based upon this finding, and in the interest of judicial economy, the court will not address defendant Miller's other arguments for dismissal.

This court further recommends *sua sponte* that the plaintiff's claim against unserved defendant Librarian Vicki Lewis, which concerns her enforcement of the $2.00 legal postage limitation, also be dismissed with prejudice based upon plaintiff's failure to exhaust his administrative remedies.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss From Defendant Michael Miller (Docket No. 18) be **granted** and plaintiff's claim against Miller be dismissed with prejudice. It is further

**RECOMMENDED** that the plaintiff's claim against unserved defendant Vicki Lewis be dismissed with prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: May 11, 2015
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge